UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

EARLALNDO SAMUEL, pro se

VS

*(In the space above enter the full name(s) of the plaintiff(s).)*

- against -

"SEE ATTACHED"

**COMPLAINT**

Jury Trial: ☒ Yes   ☐ No

(check one)

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)*

I.  **Parties in this complaint:**

A.  List your name, address and telephone number. If you are presently in custody, include your identification number and the name and address of your current place of confinement. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff   Name              EARLANDO SAMUEL, pro se
            Street Address    207 PARKER PLACE
            County, City      GLEN MILLS
            State & Zip Code  PENNSYLVANIA 19342
            Telephone Number  610 241 7537

Rev. 10/2009

B. List all defendants. You should state the full name of the defendants, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant can be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant No. 1  
Name THE DELAWARE COUNTY HOUSING AUTHORITY  
Street Address 1855 CONSTITUTION AVE. #1  
County, City WOODLYN  
State & Zip Code PENNSYLVANIA 19092

Defendant No. 2  
Name LAURA BLACKBURN, DIRECTOR  
Street Address 1855 CONSTITUTION AVE. #1  
County, City WOODLYN  
State & Zip Code PENNSYLVANIA 19092

Defendant No. 3  
Name DAWN WARE, SENIOR HCV SPECIALIST  
Street Address 1855 CONSTITUTION AVE #1  
County, City WOODLYN  
State & Zip Code PENNSYLVANIA 19092

Defendant No. 4  
Name "SEE ATTACHED"  
Street Address  
County, City  
State & Zip Code

## II. Basis for Jurisdiction:

Federal courts are courts of limited jurisdiction. Only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case.

A. What is the basis for federal court jurisdiction? *(check all that apply)*  
☒ Federal Questions  ☐ Diversity of Citizenship

B. If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? " SEE ATTACHED "

I. **PARTIES IN THIS COMPLAINT: CONTINUED**
II. B. List all defendants

    4. CHRISTINA PRO, HCV SPECIALIST
    1855 CONSTITUTION AVENUE #1
    WOODLYN, PENNSYLVANIA 19092

    5. INGERMAN PROPERTY MANAGEMENT
    5 POWELL LANE
    COLLINGSWOOD, NEW JERSEY 08108

    RASHIDA SMITH, PROPERTY MANAGER
    452 PARKER PLACE
    GLEN MILLS PENNSYLVANIA 19342

    RYANN WILLIAMS, ASSISTANT PROPERTY MANAGER
    452 PARKER PLACE
    GLEN MILLS PENNSYLVANIA 19342

    NEFERTITI RIVERS, GENERAL PROPERTY MANAGER
    452 PARKER PLACE
    GLEN MILLS PENNSYLVANIA 19342

    TERRI HARDIN, ASSISTANT PROPERTY MANAGER
    452 PARKER PLACE
    GLEN MILLS PENNSYLVANIA 19342

    GREG WARD, MAINTENANCE MANAGER/ASSISTANT PROPERTY MANAGER
    452 PARKER PLACE
    GLEN MILLS PENNSYLVANIA 19342

## II. (B) BASIS FOR JURISDICTION

**THE FAIR HOUSING ACT TITLE 24 – HOUSING AND URBAN DEVELOPMENT SUBTITLE B - REGULATIONS RELATING TO HOUSING AND URBAN DEVELOPMENT  CHAPTER I - OFFICE OF ASSISTANT SECRETARY FOR EQUAL OPPORTUNITY, DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT PART 100 - DISCRIMINATORY CONDUCT UNDER THE FAIR HOUSING ACT**
**Subpart F - Interference, Coercion or Intimidation**
**§ 100.400 Prohibited interference, coercion or intimidation.**
(a) This subpart provides the Department's interpretation of the conduct that is unlawful under section 818 of the Fair Housing Act.
(b) It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of that person having exercised or enjoyed, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this part.
(c) Conduct made unlawful under this section includes, but is not limited to, the following:
(1) Coercing a person, either orally, in writing, or by other means, to deny or limit the benefits provided that person in connection with the sale or rental of a dwelling or in connection with a residential real estate-related transaction because of race, color, religion, sex, handicap, familial status, or national origin.
(2) Threatening, intimidating or interfering with persons in their enjoyment of a dwelling because of the race, color, religion, sex, handicap, familial status, or national origin of such persons, or of visitors or associates of such persons.
(5) Retaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act.
(6) Retaliating against any person because that person reported a discriminatory housing practice to a housing provider or other authority.

**TITLE 24 §982.316(b)(1,2,3)   LIVE-IN AIDE**.
(b) At any time, the PHA may refuse to approve a particular person as a live-in aide, or may withdraw such approval, if:
(1) The person commits fraud, bribery or any other corrupt or criminal act in connection with any federal housing program;
(2) The person commits drug-related criminal activity or violent criminal activity;
(3) The person currently owes rent or other amounts to the PHA or to another PHA in connection with Section 8 or public housing assistance under the 1937 Act.

**15 USC CHAPTER 2, SUBCHAPTER I: FEDERAL TRADE COMMISSION**
§45. Unfair methods of competition unlawful;
**(a)** Declaration of unlawfulness; power to prohibit unfair practices; inapplicability to foreign trade
(1) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful.

**Federal Trade Commission Act**
**Section 5: Unfair or Deceptive Acts or Practices`**

C. If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

Plaintiff(s) state(s) of citizenship _____

Defendant(s) state(s) of citizenship _____

**III.    Statement of Claim:**

State as briefly as possible the facts of your case. Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A. Where did the events giving rise to your claim(s) occur?  "SEE ATTACHED"

B. What date and approximate time did the events giving rise to your claim(s) occur?
"SEE ATTACHED"

C. Facts:  "SEE ATTACHED"

[What happened to you?]

[Who did what?]

[Was anyone else involved?]

[Who else saw what happened?]

Rev. 10/2009

- 3 -

## III. STATEMENT OF CLAIM CONTINUED

1 Plaintiff is a 70 year old black male deemed to be Disabled by the Social Security Administration with "invisible disabilities". Invisible Disabilities are medical conditions that interfere with the usual activates of daily life, but are not immediately apparent to others. The term *invisible disabilities* also refers to symptoms such as debilitating pain, fatigue, dizziness, cognitive dysfunctions, brain injuries, learning differences and mental health disorders, as well as hearing and vision impairments. These are not always obvious to the onlooker, but can sometimes or always limit daily activities, range from mild challenges to severe limitations and vary from person to person.

2. On 2 21 2019 I applied via an e-mail to Birchwood Ingerman At Concord in 1112 Smithbridge Rd/452 Parker Place Glen Mills, Pennsylvania, 19342 610 558 3789, a tax credit property, in regards to an advertisement for leasing a two bedroom apartment soon becoming available. The advertisement stated that Housing Choice Vouchers (Section 8) were acceptable for that unit. I possessed a 2 Bedroom Housing Choice Voucher. (exh 1)

3. **About Birchwood** Catering to individuals with low to moderate or fixed incomes, Birchwood has more than 20 affordable locations throughout the Mid-Atlantic. They claim that they will make your choice of moving to a senior community not something you are choosing to do, but something you want to do. These communities are part of the Low Income Housing Tax Credit (LIHTC) program. This program is designed to offer affordable housing to only those individuals whom meet specific income requirements. **The Delaware County Housing Authority regulates the process** in order to ensure only qualified residents may reside there.

4. On 09 18 2019 I received an e-mail from RyAnn Williams, assistant property manager of Ingerman Birchwood At Concord in regards to an advertised available 2 bedroom unit for rent. (exh 1) Prior to that I had put an application in response to an advertisement in February of 2019. Unknown to me at the time, this was the "Bait" of an elaborate "bait and switch" chain fraud (where there are several actors from Ingerman Property Management Company and the Section 8 department of the Delaware County Housing Authority and each has a role to play) scheme that caused me to lose my 2 bedroom Housing Choice voucher, my Live In Aide, personal possessions but to also cause me to move into an undesirable upstairs 1 bedroom small efficiency apartment . Due to my osteoporosis and degenerative joint disease, stairs and inclines are my worst enemies when it comes to pain management that cause great pain and suffering lasting for days..

5. On 10 28 '19 I was informed via telephone by RyAnn Williams of Ingerman Birchwood At Concord that I had been approved for the two bedroom tenancy. I was instructed to come into the office in Glen Mills the next day to sign paperwork. At that time I asked her to have a copy of the lease available for my records.

6. On 10 29 '19 I met with RyAnn Williams. While we were waiting for a nurse friend of mine to arrive, her topic of conversation went into my experiences as a voucher holder. She told me that I reminded her of her uncle and that I "didn't look disabled". I asked how does a disabled person look? At that time my friend arrived. RyAnn had me re do the application process over again. When asked why her response was "because the originals were old". She constantly distracted me as I was filling out paperwork but I did notice that one of the documents that I had signed and kept was a last page that was going to be attached to other pages to make a complete document. RyAnn didn't give me any copies and in the confusion, I forgot to ask.

1

7. After that was done I asked to see the apartment but was informed by RyAnn that the apartment wouldn't be ready for occupancy until 11 15 '19 because it was still occupied by the tenant. I thought that was odd because most property owners have a clause that allow viewing by potential renters while the unit is occupied. RyAnn said that we could see a unit that was on the first floor and a one bedroom unit but would give me an idea of what the two bedroom looked like.

8. As we were leaving the office, Ryann suggested that we look at some of the greenery in the back of the development. That entailed using a "walking trail" put in place for the use of the tenants that walk for exercise. I could only walk approximately 20 feet before developing aches and pain. I told them to go on. I now suggest that was Ryanns' version of a "degree of impairment test". After taking a look at the unit I told RyAnn that it was workable in the 2 bedroom configuration. She gave me a blank lease, which I found out later, and we left.

9. On or about 11 6 '19 I delivered a sealed Voucher Packet from the Delaware County Housing Authority to RyAnn Williams, Assistant Property Manager, Ingerman Birchwood At Concord, 1112 Smithbridge Rd/452 Parker Place, Glen Mills, Pennsylvania, 19342. Before I could move forward this Packet held information that was required by the Housing Authority from the landlord or its agent. The packet that I received back from RyAnn Williams was also in a sealed envelope.

10. On or about 11 27 '19 I met with Rashida Smith, Senior Property Manager, Ingerman Birchwood At Rodney Court to sign a lease again. This time and unbeknownst to me at that time, it was for a 1 bedroom apartment with the address of 207 Parker Place, Glen Mills, Pa., 19342.

11. The information that RyAnn Williams submitted was rejected on three occasions by the Delaware County Housing Authority. (DCHA) The (DCHA) gave me a document to give to Ingerman or agent of that stated that an "Original lease and 2 copies" were needed.. I had a intake appointment scheduled for November 5th, 2019. That meeting was attended by Laura Blacburn, Director and the person that was doing my intake, Catherine Kueny, Applications and Admissions Specialist Phone: 610-490-6217 Fax: 484-487-8809

12. Not known to me at that time, this is where and when my two bedroom (exh 2) voucher was fraudulently taken and my account downgraded to a 1 bedroom through a process of manipulating dates, numbers and my signature, wrongfully downgraded and changed to a 1 bedroom voucher. This falsified 1 bedroom voucher gave the appearance that when I transferred into the Delaware County Housing Authority, that I came with a 1 bedroom voucher instead of a 2 bedroom voucher. (exh 3). I had no choice but to accept this "switched" unit because I had to have my old unit in Delaware vacated and cleaned and moved into the new unit by 11 30 '19. I was at that point of no return. It was either that efficiency unit or the street. That fraudulent 1 Bedroom voucher document was approved by Laura Blackburn, Director and signed off by Dawn Ware, Senior Housing Choice Voucher specialist. (exh 3).

**"Portability"** in the HCV (Housing Choice Voucher) program refers to the process through which the family **can transfer or "port" their rental subsidy** when they move to a location outside the jurisdiction of the public housing agency (PHA) that first gave them the voucher when they were selected for the program.

- **Initial PHAs** -The PHA that first gave the voucher to the individual when they were selected for the program.

2

- **Receiving PHAs-** The agency that will administer assistance in the area to which the individual moves.
- **There is a 60 day time window to find a unit and to move in**. This includes having the paperwork done and other things associated with "porting out" from one PHA to another such as finding housing, credit checks, cutting on and off utilities, transferring insurances, mail, etc.

13. In furtherance of the defendants' "bait and switch" scheme and after I started complaining about the wrongdoings in regards to my 2 bedroom voucher, my living situation about the stairs, and my need for my live in aide, the Ingerman Concord Pointe employee's in collusion with Christina Pro, my caseworker at the Delaware County Housing Authority (DCHA) entered into a campaign of harassment and unfair treatment. For example on or about 12 5 '19 I was called into the office by RyAnn Williams. What she wanted from me was an explanation about expenditures that I had made. She had harvested protected privacy information from my 4 bank statements that I gave her under the threat of being in violation of the lease if I didn't. I also had to sign a statement in regards to a payment for a debt consolidation loan. I went along with these things out of fear of retribution. (Bank statements are for verification of an active bank account.} This company has verification forms. There was no legitimate reason to ask for my bank statements. This amounts to violation of privacy laws, theft of personal information and harassment.

14. On or about 4 1 '20 while visiting the office to pay my rent, I was informed as I was walking out the door by Rashida Smith, Senior Property Manager, Ingerman Birchwood At Concord and at Rodney Court, that I had to turn my T V off at 10:30 pm. I was given a 10:30 curfew. I addressed this in a "cease and desist" letter dated 7 15 20 to Rashida Smith, Property manager (exh 4)

15. On 7 6 '20 at approximately 5:20 pm I heard a knock on my front door. Someone attached a note to my door that I would have a "mandatory pre-inspection" starting the next day. I was awoken at 9:30 am the next morning by Greg Ward the maintenance manager hollering. He had used his master key to enter my home and without giving the proper 48 hour notice  I addressed this in a letter dated 7 15 '20 to Rashida Smith (exh 4)

16. On 3 12 '21 I requested a copy of my file from defendant Rashida Smith. That request went ignored.

17. During post pandemic recovery, on March 1st, 2021 I was informed by Ryan Williams replacement, Terri Hardin, assistant manager of Ingerman, Concord Pointe apartments, that I was responsible for 3 months of the full amount Housing Assistance payments (exh 5) even though my out of pocket payments were made on time as usual. My caseworker, Christina Pro, is responsible for making the HAP payments and any other financial situations in regards to my account, such as re-certifications. I e mailed her in re to this matter and this is her response "I have made the correction to the Annual Reexamination. Payment sh**ould** be made around the 15th of March. Payments will catch up at that time." The significance of the three months of missing rental payments is that after three months of non payment  of the rent the property owner (Ingerman Concord Pointe) can move for eviction and if you are evicted a person with a voucher can/will lose their voucher.

18. On June 7th, 2021 I sent Christina Pro an e mail in regards to resolving the matter of my two bedroom voucher.  Her response to my question was a Notice Of Lease And Contract**.** In this letter Christina Pro raised my out of pocket rental payment 368%. The reason she gave was a

3

change in family income or family composition. On June 25th, 2021 I sent her a letter telling her that the only increase in income that I had was a 1.3% COLA and that there were no additions to my family In it I reserved my right to an Informal hearing in regards to the matter of the increase. I requested from her the computations that she used to arrive at her figures for that increase. To date even after a second request I haven't received a response from Christina Pro in regards to that.

19. I was left with no choice but to send a complaint to the PA Attorney General's office on 7 21 2-'21 (exh 6) that was forwarded to HUD OIG on 7 29 '21 in regards to these alleged wrongdoings by Christina Pro and Terri Hardin such as holding me responsible for the full amount of rent along along with increasing my out of pocket rent were threats, punishment and warnings of things to come if I keep pursuing the re-instatement of my rightfully owned two bedroom voucher by Terri Hardin, assistant manager of Ingerman, Concord Pointe apartments and Christina Pro, my Sec 8 caseworker for the Delaware County Housing Authority 1855 Constitution Ave Woodlyn, PA 19094.

20. On 8-18-2021 I e-mailed a 2nd Cease And Desist Letter (exh 7) to Rashida Smith, Nefertiti Rivers, General Manager, Terri Hardin, Asst. property manager and to Ingerman Property Management in regards to the retaliatory acts, harassment and unfair treatment that I was being subjected to because of my pursuits in regards to my wrongfully taken 2 bedroom voucher.

21. My out of pocket payments went like this…**162.00 initially**. I complained and asked questions about what happened to my 2 bedroom voucher….OOP (out of pocket) went **down to 16.00**…(I allege that amount was to keep me from asking about my 2 bedroom Voucher or complaining any further, I complained and asked about my 2 bedroom voucher…my out of pocket went **up to 58.00**….I requested information as to how caseworker Christina Pro arrived at those figures and also reserved my right to a Fair Hearing that went ignored …my out of pocket went up to 3 months of the **full apartment rental amount, 2070.00** according to Terri Hardin, assistant property manager.

21. On 8 8 '21, I e-mailed Laura Blackburn, Director in regards to the above wrongdoings and ongoing activities. Her response was that basically there weren't any wrongdoings and I would have to repeat the process in regards to a live in aide to re instate my 2 bedroom voucher (exh 8)

22. I'm alleging that those out of pocket raises were in retaliation for my activities in pursuit of my 2 bedroom voucher and also as punishment for me complaining again about the wrongful taking of my two bedroom voucher through the "illegal bait & switch" scheme that was perpetrated by Rashida Smith and Ryan Williams of Ingerman Concord Pointe along with Christina Pro, HCV specialist, Dawn Ware, Senior HCV specialist and Laura Blackburn, Director all of the Delaware County Housing Authority. Whenever I complained or even questioned about the taking of my two bedroom voucher, there would be threats of financial retribution. For example, Terri Hardin sent me an e mail saying that I owed 3 months of the full rental amount. when I merely mentioned my loss of the two bedroom voucher.

**FINANCIAL HARASSMENT**

23. On 10 28 '21 I found attached to my door paperwork named "Completing your Self-Certification (exh 9). Stated in the summarys' first paragraph that "This certification is your annual self-certification……". In section VI-RENT it shows my Tenant Paid Rent to have reverted back to the $16.00 out of pocket. In section 3) TENANT INCOME CERTIFICATION b)

4

part VI it states "For clarification, your rent amount is only the "TENANT PAID RENT" and that is all you will continue to pay until a yearly rent increase." In reality this was a ploy to lead me to believe that my out of pocket had been reduced back to the 16.00. After paying the 16.00 for three months, I received a Notice Of Delinquent Rent (exh 10). This was another fraudulent act by the defendants put in place harass, intimidate and inflict emotional distress.

24. I hand delivered two checks, one for the usual $59.00 the other for the $16.00, along with an inquiry letter asking which one is the correct amount of my out of pocket to the office, I told them to use the check for either the 16.00 or the 59.00 for my out of pocket rent for that month and remit to me the other. The check in the amount of 16.00 was given back to me.

25. On 1 20 '22 I found attached to my door a "Notice Of Delinquent Rent" (exh 11) authored by Nefertiti Rivers, General Manager of Ingerman Concord Pointe. The notice stated that I owed $129.00 in delinquent rent for the months of November and December of 2021 and $59.00 for the month of January, 2022. It also stated that "in the event that you fail to pay….the landlord will pursue remedies to the extent of the law".

26. I paid that amount "under protest" because according to the Notice because it became clear as glass that I was put in the "eviction zone" due to the fraudulent scheme engineered and carried out by Nefertiti Rivers, Terri Hardin and Christina Pro.

27. On 4 12 '22 I received another "FIVE DAY NOTICE OF DELINQUENT RENT" (exh 12) that was placed on front door authored by Nefertiti Rivers, General Property Manager. In it it states that I owe $248.00 in delinquent rent and that I have 'five days to cure delinquent rent " and I assume by her quoting a Delaware statute even though I live in Pennsylvania and so is my residence, her and Ingermans' intent is to evict me again. The letter stated that I owe the current months balance of $22.00 a current late fee of $50.00, a previous rental balance of $176.00 for my previous rental balance for the months of August 2021 through March of 2022. (exh 12)

28. I sent Nefertiti Rivers a letter of dispute and inquired as to how she arrived at those figures. The next day she produced a document that appeared to come from the Delaware County Housing Authority dated 3 10 22 that shows that an adjustment had been made to my account and that my out of pocket had been increased to $81.00. (exh 13). This document wasn't signed and it was not from my caseworker. Also, I was never given a notice or any mailings, e mails, etc. in regards to this increase. Also, these increases are based in financial statements made by the recipient in their annual re certification. To the best of my memory I didn't do one. I paid the $248.00 under protest and duress. This is just another example of how fraudulent documents are made up by the defendants' to fit the occasion

29. The same tactics, falsifying statements, creating fraudulent documents and lying were used to take my 2 bedroom voucher. There was no concern from any of the defendants about the negative effects that would have on me.

30. In acts of retaliation Neftertiti Rivers and Terri Hardin with the aid of Dawn Ware and Christina Pro of the DCHA manufactured documents and falsified statements and fraudulent documents to give the appearance of me being behind in rental payments. Even with their threats of eviction, these defendants' knew that these fraudulent documents couldn't prevail in Court to evict me. Their creation and intent was to harass and create fear and apprehension in me which it did in their quest for a Constructive Eviction.

31. The legal term *constructive eviction* refers to a landlord's action – or failure to take action – that makes the premises uninhabitable, or which robs the tenant of the use and enjoyment of the premises. This occurs without taking steps to legally evict a tenant, rather simply making staying so miserable and stressful that the tenant just leaves. Constructive eviction is not lawful, and may apply to both residential and commercial premises.

32. I submitted and updated complaint through the HUD OIG portal on 5 4 2022 and a follow up sent on 06/06/'22.

33. I made a police report of these ongoing wrongdoings with the PA State Police on 6 8 22 with hopes that the defendants would stop their threatening behaviors.

34. Through the concerted effort of the employees' of Ingerman and the Delaware County Housing Authority using the illegal "bait and switch fraud scheme", I wound up with a one bedroom Voucher and a upstairs one bedroom not very marketable unit with one tiny closet without my live in aide with stairs. Stairs and inclines are my worst enemy because of the negative effects associated with climbing them due to my Degenerative Joint Disease amongst other things.

35. My two bedroom voucher for the accommodation of my Live In Aide was suggested to me, approved by and is based on medical determinations and psychological reports, diagnosis(s}, prognosis(s) and treatment plans made by medical doctors, psychologists, therapists and the determination of "disability" by the Social Security Administration. The people whom I have named above, Rashida Smith, General Manager, Ryan Williams, Assistant Manager, Nefertiti Rivers, General Manager, Terri Hardin, Assistant Manager, Greg Ward, Maintenance of Ingerman, Concord Pointe Apartments and Christina Pro, Caseworker and Laura Blackburn, Director of the Delaware County Housing Authority, maintenance and office personnel , superseded the diagnosis(s) and determinations of my medical professionals and the SSA to make their own determination that I don't need an live in aide by relieving me of my two bedroom voucher. (exh 14 – Defendant Structure)

36. I have been and still are at the time of this filling being harassed, threatened, retaliated against, and being treated unfairly because I complained and filed complaints in pursuit and return of my 2 bedroom voucher which was wrongfully taken from me through the concerted efforts of the defendants'.

37. The defendants' conduct was more than malicious and intentional. More than mere indignities, annoyances or petty oppressions but so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. The defendants' acted (1) intentionally; (2) their conduct was extreme and outrageous; (3) their conduct was the cause (4) of me suffering such severe emotional distress and physical pain and illness that I had to seek medical and spiritual help for the years of the intentional infliction of emotional distress I had to endure at the hands of the defendants'.

IV. **Injuries:**

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received.  Relapse of panic attacks. Used Klonopin for treatment.

V. **Relief:**

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation.

1 Compensatory Damages in the amount of $390,000.00 (Three Hundred and Ninety Thousand Dollars) with a 2.5% inflation rate for the current 2 bedroom apt @$1240.00 rental, my loss of clothing, furniture, and electronics and the value of my 2 bedroom voucher that would have covered my out of pocket rent for the next 20 years.

2. Punitive Damages in the amount of $8,000,000.00 (Eight Million Dollars) The defendants' conduct was malicous, oppressive and in reckless disregard of the plaintiffs' rights. Conduct is malicous if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the person.

3. Damages are to be divided equally among the defendants'.

4. The defendants' are "Jointly & Severally" liable.

5. Any other Relief that the Court deems to be just and fair.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 16th day of June, 2022

Signature of Plaintiff _Eulendo Samuel_

Mailing Address  207 Parker Place

Glen Mills

Pennsylvania 19342

Telephone Number  610 241 7527

Fax Number *(if you have one)* _____

E-mail Address  easee2@gmail.com

Note: All plaintiffs named in the caption of the complaint must date and sign the complaint. Prisoners must also provide their inmate numbers, present place of confinement, and address.

For Prisoners:

I declare under penalty of perjury that on this ___ day of _____, 20___, I am delivering this complaint to prison authorities to be mailed to the Clerk's Office of the United States District Court for the Eastern District of Pennsylvania.

Signature of Plaintiff: _____

Inmate Number _____

Dickie, McCarney & Chilcote, PC
1222 Delaware Avenue, Suite 1000
Wilmington, DE 19801

U.S.M.S. X-RAY

EARLANDO SAMUEL, pro se
207 PARKER PL
GLEN MILLS, PA 19342

CLERK OF COURT, EDPa
JAMES A BYRNE, U S COURTHOUSE
ROOM 2609
601 MARKET STREET
PHILADELPHIA PA 19106

RECEIVED JUN 21 2022

7018 1130 0002 0238 8291

UNITED STATES POSTAL SERVICE
1000
19106

U.S. POSTAGE PAID
FCM LG ENV
CHADDS FORD, PA
19317
JUN 16, 22
AMOUNT
$9.56
R2305E124945-01