# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EARLANDO SAMUEL, | ) |
|         Plaintiff, | ) |
| v. | ) Civil Action No. 2:22-cv-2451 |
| THE DELAWARE COUNTY HOUSING AUTHORITY, ET. AL. | ) |
|         Defendants. | ) |

**MEMORANDUM IN SUPPORT OF THE INGERMAN DEFENDANTS' MOTION TO DISMISS PLAINTIFF EARLANDO SAMUEL'S AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I. NATURE AND STAGE OF PROCEEDINGS ................................................................... 1

II. STATEMENT OF FACTS .................................................................................................. 2

    A. The Section 8 Housing Choice Voucher Program ..................................................... 2

    B. Alleged Events Prior to June 20, 2020. ..................................................................... 3

    C. Allegations Events After June 20, 2020. .................................................................. 4

III. LEGAL STANDARD ......................................................................................................... 6

IV. ARGUMENT ...................................................................................................................... 7

    A. Plaintiff's Claims under the Fair Housing Act Fail as a Matter of Law. ................. 7

    B. Plaintiff's Claim under the Americans With Disabilities Act Fails as a Matter of Law. ........................................................................................................ 9

    C. Plaintiff Lacks Standing to Assert Claims Under Federal Criminal Statutes. ................................................................................................................... 11

    D. Plaintiff's Claim Under the Federal Trade Commission Act Fails as a Matter of Law. ........................................................................................................ 12

    E. Plaintiff's Claim under the Pennsylvania's Consumer Protection Law Fails as a Matter of Law. ........................................................................................ 12

    F. Plaintiff's Claim for Intentional Infliction of Emotional Distress Fails as a Matter of Law. ........................................................................................................ 14

V. CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Cardiovascular Sys. Inc. v. Scimed Life Sys., Inc.*,
   988 F.2d 1157 (Fed. Cir. 1993)...................................................................................6

*Allen v. Administrative Office of Pennsylvania Courts*,
   270 F. App'x 149 (3d Cir. 2008) ................................................................................11

*Anderson v. Macy's, Inc.*,
   943 F. Supp. 2d 531 (W.D. Pa. 2013)........................................................................10

*Ashcroft v. Iqbal*,
   556 U.S. at 678, 129 S. Ct. 1937 (2009).....................................................................7

*Baker v. Younkin*,
   529 F. App'x 114 (3d Cir. 2013) .................................................................................7

*Bardelli v. Allied Serv. Inst. of Rehab. Med.*,
   No. 3:14-0691, 2016 LEXIS 135358, at *7 (M.D. Pa. Sept. 30, 2016)....................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 55, 127 S. Ct. 1955 (2007)...................................................................9

*Berardelli v. Allied Servs. Inst. of Rehab. Med.*
   Civil Action No. 3:14-0691, 2016 U.S. Dist. LEXIS 135358, at *7
   (M.D. Pa. Sept. 30, 2016) ..........................................................................................10

*Buczek v. First Nat'l Bank of Mifflintown*,
   366 Pa. Super. 551, 531 A.2d 1122 (Pa. Super. Ct. 1987).........................................14

*Chuy v. Phila. Eagles Football Club*,
   595 F.2d 125 (3d Cir.1979)........................................................................................13

*Cox v. Keystone Carbon Co.*,
   861 F.2d 390 (3d Cir.1988)........................................................................................14

*Davis v. Rubin*,
   No. 20-cv-6271, 2020 U.S. Dist. LEXIS 240453 (E.D. Pa. Dec. 22, 2020)..............9

*Disability Rights N.J., Inc. v. Comm'r, New Jersey Dep't of Human Servs.*,
   796 F.3d 293 (3d Cir. 2015).......................................................................................10

*Erickson v. Pardus*,
   551 U.S. 89 (2007).......................................................................................................7

*General Motors Corp. v. New A.C. Chevrolet, Inc.*,
   263 F.3d 296 (3d Cir. 2001).................................................................................................6

*Kanter v. Barella*,
   489 F.3d 170 (3d Cir. 2007).................................................................................................6

*Lloyd v. Presby's Inspired Life*,
   251 F. Supp. 3d 891 (E.D. Pa. 2017) ...................................................................................8

*Mahdi Sufi El v. People's Emergency Ctr.*,
   315 F. Supp. 3d 837 (E.D. Pa. 2018) .................................................................................10

*Mitchell v. Walters*,
   No. 10-1061, 2010 U.S. Dist. LEXIS 93265 (D.N.J. Sept. 8, 2010) .................................10

*Morse v. Lower Merion Sch. Dist.*,
    132 F.3d 902 at 906 (3d Cir. 1997).....................................................................................6

*Palek v. State Farm Fire & Cas. Co.*,
   535 F.Supp.3d 382 (W.D. Pa. 2021)...................................................................................13

*Pavalone v. Pres. Mgmt.*,
   No. 3:18-cv-00191, 2019 U.S. Dist. LEXIS 4101, at *15
   (M.D. Pa. Jan. 8, 2019) ......................................................................................................10

*Ranalli v. Etsy.com, LLC*,
   570 F. Supp. 3d 301 (W.D. Pa. 2021) ................................................................................12

*Peeples v. Portfolio Recovery Assocs.*,
   No. 22-CV-4639-RBS, 2023 U.S. Dist. LEXIS 12439, at *8
   (E.D. Pa. Jan. 24, 2023) .....................................................................................................12

*Revock v. Cowpet Bay W. Condominium Ass'n*,
   853 F.3d 96 (3d Cir. 2017)...................................................................................................7

*Rosembert v. Borough of E. Landsdowne*,
   14 F.Supp.3d 631 (E.D. Pa. 2014) .....................................................................................13

*Seldon v. Home Loan Servs., Inc.*,
   647 F. Supp. 2d 451 (E.D. Pa. 2009) .................................................................................12

*Smith v. RB Distribution, Inc.*,
   498 F. Supp. 3d 645 (E.D. Pa. 2020) .................................................................................14

*Stephanie v. U.S. Bank*,
   No. 1:21-cv-327-SBP, 2022 U.S. Dist. LEXIS 172773 (W.D. Pa. Sep. 23,
   2022) ............................................................................................................................12, 13

*Thompson v. The Glenmede Trust Co.*,
   No. 04428, 2003 Phila. Ct. Com. Pl. LEXIS 76 (Pa. Ct. Com. Pl. Philadelphia
   County Feb. 18, 2003) ...............................................................................................12

*United States v. Batchelder*,
   442 U.S. 114 (1979) ..................................................................................................11

*Whaley v. Pennsylvania*,
   No. 4:22-CV-00987, 2022 U.S. Dist. LEXIS 231931, at *34
   (M.D. Pa. Dec. 27, 2022) ..........................................................................................11

**Statutes**

73 P.S. § 201-2(4)(ix) .........................................................................................................12

73 P.S. § 201-9.2(a) ...........................................................................................................11

15 U.S.C. § 45 ....................................................................................................................11

18 U.S.C. § 241 ..................................................................................................................11

18 U.S.C. §2261A ..............................................................................................................11

42 U.S.C. § 1437 ............................................................................................................2, 3

42 U.S.C. § 3613(a)(1)(A) ...................................................................................................8

42 U.S.C. § 3617 .................................................................................................................7

73 Pa. Stat. § 201-2(4)(xxi) ................................................................................................13

Title III of the Americans with Disabilities Act, 42 U.S.C. §12182 .....................9, 10, 11

The Fair Housing Act ..............................................................................................1, 7, 8, 9

Pennsylvania Unfair Trade Practices and Consumer Protection Law .................1, 11, 12, 13

Defendants Ingerman Property Management[1] ("Ingerman"), Rashida Smith, Ryann Williams, Nefertiti Rivers, Terri Hardin, and Greg Warden (together "Ingerman Defendants") respectfully submit this Memorandum in support of their Motion to Dismiss the Amended Complaint seeking dismissal of all claims asserted against them by Plaintiff Earlando Samuel.

I.   **NATURE AND STAGE OF PROCEEDINGS**

Plaintiff filed a *pro se* complaint on June 20, 2022 and was granted leave to proceed *in forma pauperis*. Plaintiff names 11 defendants that can be categorized in two groups: (1) defendants associated with the Delaware County Housing Authority (DCHA), including several of its employees; and (2) defendants associated with Ingerman, including several of its employees. On December 29, 2022, before the Ingerman Defendants responded to Plaintiff's initial Complaint, Plaintiff filed an Amended Complaint adding additional allegations and causes of action.

The claims arise from Plaintiff's participation in the U.S. Department of Housing and Urban Development's ("HUD") Section 8 Tenant-Based Housing Choice Voucher Program (the "Section 8 Program") and his experience as a tenant at an Ingerman apartment complex, Birchwood at Concord. Though difficult to discern, Plaintiff alleges he held a two-bedroom Housing Choice Voucher (HCV) and applied for a two-bedroom unit in the Birchwood at Concord apartment complex in 2019. He alleges his HCV was fraudulently taken from him pursuant to a conspiracy between Ingerman and DCHA and that Ingerman and DCHA harassed and retaliated against him for raising concerns about, among other things, his HCV. He brings claims under the Fair Housing Act, the Americans with Disabilities Act, several federal criminal statutes, The Federal Trade Commission Act, the Pennsylvania Unfair Trade Practices and Consumer Protection

---

[1] Plaintiff erroneously filed the Amended Complaint against Ingerman Property Management, however, Ingerman's correct legal name is Ingerman Management Company.

Law, as well as a state common law claim for Intentional Infliction of Emotional Distress. As detailed herein, Plaintiff fails to state a claim upon which relief may be granted for each of his claims.[2] Consequently, his Amended Complaint must be dismissed in its entirety against the Ingerman Defendants.

## II.   STATEMENT OF FACTS[3]

### A.   The Section 8 Housing Choice Voucher Program

The Section 8 Program allows public housing agencies ("PHA"), typically state or local government agencies, to enter into housing assistance payment ("HAP") contracts with interested property owners who agree to accept PHA assistance payments to subsidize rent payments of tenants possessing Section 8 housing vouchers. *See generally* 42 U.S.C. §§ 1437f(a)-(k); 24 C.F.R. pt. 982. To be approved for voucher assistance under the Section 8 Program, a tenant must be certified by the PHA as income-eligible. 42 U.S.C. § 1437(f)(o)(1)-(5). Income-eligibility must be verified annually by the PHA and voucher recipients are subject to reexamination at any time. 24 C.F.R. §§ 982.516(a)(1); 982.516(c)(1).

Once a Section 8 tenant finds a unit, it must be approved for tenancy by the PHA. 42 U.S.C. § 1437(f)(o)(3). Essentially a tenant, working in conjunction with the property owner, will submit a Request for Tenancy Approval ("RFTA") to the PHA to determine whether the unit is eligible based on the affordability for the family. 42 U.S.C. § 1437(f)(o)(3). Once the RFTA is approved by the PHA, the PHA and property owner execute a HAP contract and the property owner and the tenant execute a rental lease. 42 U.S.C. § 1437(f)(o)(7). Before any assistance payment is made,

---

[2]   Ingerman also incorporates by reference all arguments made by the DCHA Defendants in their Motion to Dismiss Plaintiff's Amended Complaint, Docket No. 40.

[3]   For purposes of this Motion only, Defendants assume, without conceding, the truth of the allegations set forth in Plaintiff's Complaint.

the PHA inspects the unit to ascertain the unit's compliance with codified housing quality standards ("HQS"). 42 U.S.C. § 1437(f)(o)(8)(A). The unit is thereafter subject to biennial inspections by the PHA. 42 U.S.C. § 1437(f)(o)(8)(D).

**B.     Alleged Events Prior to June 20, 2020.**

Plaintiff alleges he applied for an apartment at Ingerman Birchwood at Concord Point in February 2019. Am. Compl. ¶ 2. He subsequently received an email advertisement for a two-bedroom apartment available for rent at Ingerman Birchwood at Concord Point in October 2019. Am. Compl. ¶ 4. He alleges he received a call on October 28, 2019 from RyAnn Williams, Assistant Property Manager, that he had been approved for an apartment and could come into the office to sign the necessary paperwork. *Id*. at ¶ 5. He alleges he met with Ms. Williams on October 29, 2019, but could not see the apartment because it was currently occupied. *Id*. at ¶ 7. He alleges Ms. Williams distracted him while he signed the paperwork and suggested he look at the greenery in the development via a walking trail, which he alleges constituted a "degree of impairment test." *Id*. at ¶ 8. He alleges he toured a one-bedroom unit on the first floor and told Ms. Williams "it was workable in the 2 bedroom configuration." *Id*. at ¶ 9. He alleges she had him sign a blank lease. *Id*. at ¶ 8.

Plaintiff alleges he delivered a sealed HCV Packet from the Delaware County Housing Authority to Ms. Williams on November 6, 2019 and received a sealed packet from her in return. Am. Compl. ¶ 9-10. He alleges he met with Rashida Smith, Senior Property Manager, on November 11, 2019 to sign a lease, which he did not realize at the time was for a one-bedroom apartment. *Id*. at ¶ 10.

Plaintiff alleges he had an intake appointment on November 5, 2019 with the Delaware County Housing Authority during which the DCHA rejected his information. Am. Compl. ¶ 11. The DCHA gave him documentation for Ingerman to complete, which required an original and

3

two copies of the lease. *Id*. at ¶ 11. Plaintiff alleges he returned to Ingerman Concord Point on November 27, 2019 and received "another 25 page lease" from Ms. Smith. *Id*. at ¶ 12. He took the lease back to DCHA and was provided paperwork in return to submit to Ingerman. *Id*. He alleges that "this was a scheme…to deprive me of my two bedroom…voucher. It was fraudulently taken and my account downgraded to a 1 bedroom through a process of manipulating dates, numbers, and my signature[.]" *Id*. Plaintiff does not identify who is responsible for the alleged manipulation. *Id*. Plaintiff alleges he felt he had no choice but to accept the one bedroom voucher because he had to vacate his current apartment. *Id*. He alleges he accepted the one bedroom under "undue influence" because he has a mild cognitive disorder for which he was not taking the proper medication, though he does not allege he informed anyone at DCHA or Ingerman of his condition or his lack of proper medication.

Plaintiff alleges that after he started complaining about his two-bedroom voucher, the stairs, and his need for a live-in aide, Ingerman employees colluded with his DCHA case worker, Christina Pro, to harass him. Am. Compl. ¶ 13. In particular, he alleges Ms. Williams "harvested privacy information" from his bank statements and told him he had to turn his television off at 10:30 PM and that he had a 10:30 PM curfew. *Id*. at ¶¶ 13-14.

      C.      **Allegations Events After June 20, 2020.**

On July 6, 2020, Plaintiff received notice that a "mandatory pre-inspection" would occur the following day. Am. Compl. ¶ 15. Ingerman's Maintenance Manager, Greg Ward, visited Plaintiff's apartment at 9:30 the following morning and used his master key to enter Plaintiff's unit. *Id*. at ¶ 15. Plaintiff alleges he did not receive the required 48 hours' notice of the inspection, a concern he raised in a letter to Ms. Smith on July 15, 2020. *Id*.

On March 1, 2021, Ingerman informed Plaintiff it had not received HAP payments for the previous three months. Am. Compl. ¶ 17. When Plaintiff raised the issue with Ms. Pro, Ms. Pro

4

responded that she corrected the issue and the payments should be received by Ingerman on or about March 15, 2021. *Id*.

On June 7, 2021, Plaintiff claims to have contacted Ms. Pro to resolve the issue regarding his two-bedroom HCV. Am. Compl. ¶ 18. Ms. Pro sent Plaintiff a Notice of Lease and Contract, which allegedly raised his out-of-pocket payment by 368% due to a change in family income or family composition. *Id*. Plaintiff responded that the only increase in his income was a 1.3% Cost-of-Living-Adjustment to his Supplemental Security Income. *Id*.

On July 21, 2021, Plaintiff sent a complaint to the Pennsylvania Attorney's General office alleging he had defrauded by Ms. Pro and Terri Hardin, Ingerman Assistant Property Manager, who purportedly held him responsible for full rent, increased his out-of-pocket payments, and threatened him related to his pursuit to have his two-bedroom HCV reinstated. Am. Compl. ¶ 19. The Attorney's General office forwarded his complaint to the U.S. Department of Housing and Urban Development ("HUD"). *Id*.

On January 20, 2022, Plaintiff allegedly received a Notice of Delinquent Rent from Ms. Rivers, stating he owed rent for November 2021, December 2021, and January 2022. Am. Compl. ¶¶ 26, 27. He paid the delinquent amount "under protest." *Id*. at ¶ 27. Plaintiff allegedly received a Five-Day Notice of Delinquent Rent on April 12, 2022, stating he owed a late fee and rental balances from August 2021 through March 2022. *Id*. at ¶ 28. When Plaintiff inquired as to how Ingerman determined he was delinquent, Ms. Rivers provided Plaintiff with a March 10, 2022 DCHA document reflecting an increase in his out-of-pocket expenses. *Id*. at ¶ 29; Ex.13. Plaintiff asserts he was not given notice of the increase. *Id*. at ¶ 29. Plaintiff claims that Ms. Rivers, Ms. Hardin and Dawn Ware, DCHA Senior HCV Specialist, and Ms. Pro manufactured documents

and falsified statements to give the appearance that Plaintiff was behind on his rental payments in an attempt to constructively evict him. *Id*. at ¶ 31.

Plaintiff submitted a complaint to HUD on May 4, 2022 and sent a follow-up on June 6, 2022. *Id*. at ¶ 33. He also filed a police report on June 8, 2022. *Id*. at ¶ 34. Plaintiff still resides at Birchwood at Concord Point and alleges that he continues to experience unspecified harassment and retaliation. *Id*. at ¶ 27.

### III. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all well-pleaded factual allegations, and must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the plaintiff. *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007); *General Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 325 (3d Cir. 2001). A court need not, however, accept unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations contained in the complaint. *General Motors Corp.*, 263 F.3d at 333 (3d Cir. 2001) (quoting James Wm. Moore, Moore's Federal Practice § 12.34[1][b], at 12-61 to 12-63 (3d ed. 2001) (explaining that "liberal construction has its limits" because the pleading must set forth "sufficient information for the court to determine whether some recognized legal theory exists on which relief could be accorded to the pleader... [c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").

A complaint may be dismissed where the facts pleaded, and the reasonable inferences drawn from such facts, are insufficient to support the relief sought. *Morse v. Lower Merion Sch. Dist*, 132 F.3d at 906 (3d Cir. 1997). Thus, Rule 12(b)(6) operates to weed out claims that, as in this case, "are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burden of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys. Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993). A complaint filed by a *pro se* litigant is to

be liberally construed and subject to less stringent standards than pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197 (2007) (internal citation omitted). "However, a *pro se* complaint must still contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Baker v. Younkin*, 529 F. App'x 114, 115 (3d Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (2009)) (internal quotation marks omitted).

IV. **ARGUMENT**

    A. **Plaintiff's Claims under the Fair Housing Act Fail as a Matter of Law.**

Plaintiff claims he has been "harassed, threatened, retaliated against, and…treated unfairly" in violation of the Fair Housing Act because he filed complaints related to his two-bedroom HCV and his live-in aide. As a matter of law, Plaintiff fails to state a violation of the Fair Housing Act against any Ingerman Defendant.

The Fair Housing Act provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. HUD Regulations provide that unlawful conduct under § 3617 includes, among other things, "[t]hreatening, intimidating or interfering with persons in their enjoyment of a dwelling." 24 C.F.R. 100.400(c)(2).

To plead an interference claim under 42 U.S.C. § 3617, a plaintiff must assert: "(1) that the plaintiff exercised or enjoyed any right protected by Sections 3603-3606; (2) that the defendant's conduct constitutes interference; and (3) a causal connection existed between the exercise or enjoyment of the right and the defendant's conduct." *Revock v. Cowpet Bay W. Condominium Ass'n*, 853 F.3d 96, 112-13 (3d Cir. 2017) (internal citations omitted). A retaliation claim requires a plaintiff to establish that "(1) [he] engaged in a protected activity; (2) the defendant subjected [him] to an adverse action; and (3) a causal link exists between the protected activity and the

7

adverse action." *Lloyd v. Presby's Inspired Life*, 251 F. Supp. 3d 891, 904 (E.D. Pa. 2017) (internal citations omitted). Plaintiff cannot make either showing.

First, as a threshold matter, many of Plaintiff's claims are barred by the FHA's two-year statute of limitations. *Lloyd*, 251 F.Supp.3d at 903 ("The Fair Housing Act's statute of limitations provision states that an action must be filed in the appropriate federal or state court 'not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice.'") (quoting 42 U.S.C. § 3613(a)(1)(A)). Plaintiff filed his initial Complaint on June 20, 2022; thus any claims arising prior to June 20, 2020 are barred by the applicable statute of limitations.

Plaintiff alleges the following conduct within the statute of limitations period (post-June 20, 2020) in which an Ingerman Defendant was involved:

- On July 15, 2020, Plaintiff sent a letter to Ms. Smith regarding his curfew and the lack of notice before Mr. Ward entered Plaintiff's apartment for an inspection. Am. Compl. ¶¶ 14, 15.

- On July 21, 2021, Plaintiff submitted a complaint to the PA Attorney General regarding alleged wrongdoings by Ms. Pro and Ms. Harden, including that Ingerman held him responsible for the full amount of rent. *Id.* at ¶ 19.

- On August 18, 2021, Plaintiff emailed a cease and desist letter to Ms. Smith, Ms. Rivers, and Ms. Harden regarding unspecified "retaliatory acts and unfair treatment" to which he was being subjected. *Id.* at ¶ 19.

- Plaintiff's out of pocket expenses increased to the full amount of rent for three months. *Id.* at ¶ 21.

- Ms. Rivers and Ms. Harden, with the aid of Ms. Ware and Ms. Pro, "manufactured documents and falsified statements" to give the appearance of Plaintiff being behind in rental payments. *Id.* at ¶ 31.

- Plaintiff filed a complaint with HUD on May 4, 2022 and followed up on June 6, 2022. He also made a police report about "the wrongdoings." *Id.* at ¶¶ 33-34.

- Plaintiff is still "being harassed, threatened, retaliated against, and…treated unfairly" by unspecified Defendants. *Id.* at ¶ 37.

8

Plaintiff's sole factual allegation is that his out of pocket expenses increased to the full amount of rent for three months. His own allegations bely this contention, however. Indeed, Plaintiff notes that Ms. Pro made the necessary corrections and any late payments would be caught up by March 15, 2021. Am. Compl. ¶ 17. Accordingly, Plaintiff did not experience an adverse action nor did the conduct of any Ingerman Defendant interfere with Plaintiff's use and enjoyment of the property. *See Davis v. Rubin*, No. 20-CV-6271, 2020 U.S. Dist. LEXIS 240453, at *9 (E.D. Pa. Dec. 22, 2020) (dismissing interference and retaliation claims under § 3613 where the allegations failed to describe the alleged conduct with particular sufficiency nor did it plausibly link protected activity to an adverse action or retaliatory motive). Thus, Plaintiff's allegation that he believed he was responsible for the full amount of rent is insufficient to state a claim of interference or retaliation under the Fair Housing Act.

Otherwise, Plaintiff uses the terms "harassment" and "retaliation" without a single supporting fact, which is insufficient to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). Consequently, Plaintiff's claims under the Fair Housing Act against the Ingerman Defendants must be dismissed.

    **B.**    **Plaintiff's Claim under the Americans with Disabilities Act Fails as a Matter of Law.**

Plaintiff asserts a claim under Title III of the Americans with Disabilities Act, 42 U.S.C. §12182, which provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." To state a claim, Plaintiff must allege that: "(1) he was discriminated against on the basis of disability; (2) in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public

accommodation; (3) by any person who owns or operates a place of public accommodation." *Mahdi Sufi El v. People's Emergency Ctr.*, 315 F. Supp. 3d 837, 843 (E.D. Pa. 2018) (quoting *Disability Rights N.J., Inc. v. Comm'r, New Jersey Dep't of Human Servs.*, 796 F.3d 293, 301 (3d Cir. 2015). Plaintiff fails to state a claim under the ADA for several reasons.

First, while "public accommodations" may include "places of lodging", the regulations limit a "place of lodging" to guest rooms for short-term sleeping stays where the occupant does not have the right to return to a specific room or unit after the conclusion of his or their stay. *See* 28 C.F.R. § 36.104. Indeed, "apartments and condominiums do not constitute public accommodations[.]" *People's Emergency Ctr.*, 315 F. Supp. at 843 (citing *Mitchell v. Walters*, No. 10-1061, 2010 U.S. Dist. LEXIS 93265 at *4 (D.N.J. Sept. 8, 2010). This is true "even where the property accepts tenants receiving federal housing subsidies[.]" *Id.* (citing *Mitchell v. Walters*, No. 10-1061, 2010 U.S. Dist. LEXIS 93265 at *4 (D.N.J. Sept. 8, 2010)). Plaintiff's claim under the ADA should be dismissed on that basis alone.

Further, damages are not an available remedy in a private action under Title III of the ADA. *Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 538 (W.D. Pa. 2013). Rather, only injunctive relief is available. *Id.* Here, Plaintiff fails to allege any facts from which the Court may liberally construe a claim for prospective injunctive relief. *See Pavalone v. Pres. Mgmt.*, No. 3:18-cv-00191, 2019 U.S. Dist. LEXIS 4101, at *15 (M.D. Pa. Jan. 8, 2019) (citing *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, Civil Action No. 3:14-0691, 2016 U.S. Dist. LEXIS 135358, at *7 (M.D. Pa. Sept. 30, 2016) (dismissing ADA claim where "[t]he only relief request…is an award of damages" and the plaintiffs failed to allege a claim for prospective injunctive relief). For this reason, too, Plaintiff's claim under the ADA should be dismissed.

Finally, even if Plaintiff could overcome these barriers, his factual allegations are insufficient to state a claim. Indeed, Plaintiff fails to allege that he requested, and that Ingerman denied, any accommodation. Nor does he allege he informed Ingerman of any alleged disability. Thus, even if Ingerman was covered under Title III of the ADA and Plaintiff sought any form of injunctive relief, both of which Ingerman denies, Plaintiff nonetheless fails to set forth facts permitting a plausible inference that Ingerman discriminated against him on the basis of a disability. For all of these reasons, Plaintiff's ADA claim against the Ingerman Defendants must be dismissed.

### C. Plaintiff Lacks Standing to Assert Claims Under Federal Criminal Statutes.

Plaintiff alleges the Ingerman Defendants violated 18 U.S.C. § 241 (Conspiracy Against Rights) and 18 U.S.C. § 2261A (Stalking), each of which are federal criminal statutes. To the extent Plaintiff seeks to impose criminal liability upon the Ingerman Defendants pursuant to these criminal statutes, he lacks standing to proceed. *See Allen v. Administrative Office of Pennsylvania Courts*, 270 F. App'x 149, 150 (3d Cir. 2008); (dismissing claims under 18 U.S.C. § 241 because "[t]he United States Attorney is responsible for the prosecution of all criminal cases within his or her district."); *Whaley v. Pennsylvania*, No. 4:22-CV-00987, 2022 U.S. Dist. LEXIS 231931, at *34 (M.D. Pa. Dec. 27, 2022) ("Courts have time and time again found that criminal statutes do not create private causes of action."). The decision of whether to prosecute, and what criminal charges to bring, rests with the prosecutor. *See United States v. Batchelder*, 442 U.S. 114, 124 99 S. Ct. 2198 (1979). Accordingly, Plaintiff's claims under these criminal statutes must be dismissed for failure to state a claim upon which relief may be granted.

11

**D.     Plaintiff's Claim Under the Federal Trade Commission Act Fails as a Matter of Law.**

Plaintiff appears to assert a claim under the Federal Trade Commission Act, 15 U.S.C. § 45.  His claim is not plausible, however, because there is no private cause of action under this statute. *See Peeples v. Portfolio Recovery Assocs., LLC*, No. 22-CV-4639-RBS, 2023 U.S. Dist. LEXIS 12439, at *8 (E.D. Pa. Jan. 24, 2023) (collecting cases) (dismissing a private plaintiff's claim under the Federal Trade Commission Act with prejudice).  Plaintiff's claim under 15 U.S.C. § 45 must be dismissed with prejudice.

**E.     Plaintiff's Claim under the Pennsylvania's Consumer Protection Law Fails as a Matter of Law.**

Though not entirely clear, Plaintiff appears to attempt to allege a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") based on a "bait and switch" scheme that resulted in his loss of a two-bedroom HCV and his Live in Aide. The UTPCPL creates a cause of action for consumers who suffer an ascertainable loss due to unfair or deceptive acts or practices.  73 P.S. § 201-9.2(a).

Plaintiff invokes the advertising section of the statute, which prohibits "[a]dvertising goods or services with intent not to sell them as advertised." 73 P.S. § 201-2(4)(ix).  Claims for false advertising require proof of three elements: "(1) a defendant's representation is false; (2) it actually deceives or has a tendency to deceive; and (3) the representation is likely to make a difference in the purchasing decision." *Stephanie v. U.S. Bank*, No. 1:21-cv-237-SPB, 2022 U.S. Dist. LEXIS 172773, at *33 (W.D. Pa. Sep. 23, 2022) (quoting *Ranalli v. Etsy.com, LLC*, 570 F. Supp. 3d 301, 307 (W.D. Pa. 2021).

The only advertisement referenced in the Amended Complaint is one from Birchwood at Concord Point, noting that two-bedroom apartments were available for rent.  *See* Am. Compl. ¶¶ 2, 4.  Plaintiff claims he applied for an apartment at Ingerman Concord Point on February 21, 2019.

12

*Id*. at ¶ 2.  He alleges he subsequently received an email from Ms. Williams on September 18, 2019 advertising two-bedroom apartments for rent.  *Id*. at ¶ 4.  Plaintiff does not allege the advertisement was false, that it deceived him, or that the representation impacted his decision to lease an apartment.  To the contrary, Plaintiff alleges he received the advertisement *after* he applied for an apartment.  Nor can any purported representation by Ms. Williams during Plaintiff's visit to the property save Plaintiff's claim, as individual representations do not constitute advertising under the UTPCPL.  *See Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 466 (E.D. Pa. 2009) ("Because individual employees or agents of defendants made [the representations at issue], they do not qualify as advertising and cannot constitute a violation of the UTPCPL's false advertising prohibition"); *Thompson v. The Glenmede Trust Co*., No. 04428, 2003 Phila. Ct. Com. Pl. LEXIS 76, at *1 (Pa. Ct. Com. Pl. Philadelphia County Feb. 18, 2003) ("Individual representations made by [defendants] upon which [p]laintiffs allegedly relied do not constitute 'advertising' as intended by the UTPCPL."). As a result, Plaintiff failed to plead any facts support the three elements of a false advertising claim.

To the extent Plaintiff's claims can be read as asserting a claim under Section 201-2(4)(xxi) of the UTPCL, referred to as the statute's  "catch-all provision" provision, such a claim also fails.  The catch-all provision makes it unlawful to engage in "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." *Stephanie*, 2022 U.S. Dist. LEXIS 172773, at *34-35 (citing 73 Pa. Stat. § 201-2(4)(xxi)).  To state a claim, Plaintiff must allege (1) conduct with potential to deceive (2) which creates the likelihood of confusion or misunderstanding; (3) justifiable reliance; and (4) and ascertainable loss.  *Palek v. State Farm Fire & Cas. Co*., 535 F. Supp. 3d 382 (W.D. Pa. 2021).  Any claim with respect to Plaintiff's purported loss of his two-bedroom HCV or live-in aid fails because he does not allege he relied on any

13

deceitful conduct by any Ingerman Defendant. To the contrary, Plaintiff's allegations recount that he completed multiple documents and couriered sealed envelopes between Ingerman and DCHA. He does not, however, allege he relied on any representation by an Ingerman Defendant that caused him to lose his two-bedroom HCV or live-in aide. Nor could he, as Ingerman does not have a hand in the HCV or live-in aid processes. Plaintiff's contention related to his purported loss of a live-in aide is further undermined by his admission that he did not request a live-in aide. *See* Am. Compl. ¶ 36 ("I never asked for a Live in Aide."). Accordingly, Plaintiff suffered no loss by way of conduct of an Ingerman Defendant. Plaintiff's claim under the UTPCPL against the Ingerman Defendants fails a matter of law.

### F. Plaintiff's Claim for Intentional Infliction of Emotional Distress Fails as a Matter of Law.

Plaintiff's final claim is one for intentional infliction of emotional distress. Such a claim requires a plaintiff to allege: (1) conduct that is extreme or outrageous; (2) conduct that is intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe. *Rosembert v. Borough of E. Landsdowne*, 14 F.Supp.3d 631, 645 (E.D. Pa. 2014) (quoting *Chuy v. Phila. Eagles Football Club*, 595 F.2d 125, 1273 (3d Cir.1979)). To be actionable, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir.1988) (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 366 Pa. Super. 551, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987).

Plaintiff's Amended Complaint is wholly devoid of any such allegations. Indeed, he does not allege any extreme or outrageous conduct that could be considered "beyond all possible bounds of decency" nor does he allege severe emotional distress. As a result, Plaintiff's claim for intentional infliction of emotional distress must be dismissed for failure to state a claim. *See Smith*

14

*v. RB Distribution, Inc.*, 498 F. Supp. 3d 645, 666 (E.D. Pa. 2020) (finding conclusory allegations that the defendants "intentionally and recklessly harassed and inflicted emotional injury on [the plaintiff] by subjecting her to outrageous treatment beyond all bounds of decency" insufficient to state a claim).

## V. CONCLUSION

For the foregoing reasons, the Ingerman Defendants respectfully request that the Court grant Defendants' Motion and dismiss Plaintiff's Amended Complaint in its entirety with prejudice.

Dated: January 30, 2023	Respectfully submitted,

	 /s  Martin C. Bryce
	Martin C. Bryce
	Catharine E. Lubin
	Ballard Spahr LLP
	1735 Market Street, 51st Floor
	Philadelphia, Pennsylvania 19103
	Telephone:  215-864-8751
	brycem@ballardpahr.com
	lubink@ballardspahr.com

	*Counsel for Defendants*