IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EARLANDO SAMUEL,**<br>       **Plaintiff,**<br><br>         v.<br><br>**THE DELAWARE COUNTY HOUSING AUTHORITY, LAURA BLACKBURN, DAWN WARE, CHRISTINA PRO, AND CATHERINE CUENY,**<br>       **Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO. 22-2451** |

## MEMORANDUM OPINION

Plaintiff Earlando Samuel, proceeding *pro se*, has sued his landlord, the Delaware County Housing Authority ("DCHA"), and some of its employees, alleging that they engaged in a "bait-and-switch" scheme to induce him to rent a one-bedroom apartment when he previously had a voucher that entitled him to rent a two-bedroom apartment with a live-in aide in another state, in violation of implementing regulations for the Section 8 federal housing voucher program. Defendants have moved for summary judgment, arguing that any denial of such an arrangement was committed to their discretion by those same regulations. Fed. R. Civ. P. 56(a). For the reasons stated below, Defendants' motion will be granted.

I.  **BACKGROUND**

Except where noted below, the facts of this case are not in genuine dispute.[1] Prior to 2019, Samuel had been living in a two-bedroom apartment with the help of a Housing Choice Voucher ("HCV") from the New Castle County Housing Authority ("NCCHA") in Delaware. Consistent with his doctor's recommendation from August 2012, he had a live-in aide in this

---

[1] The Court recited Samuel's allegations in his Amended Complaint at length when addressing Defendants' Motion to Dismiss. *Samuel v. Delaware Cnty. Housing Auth.*, 2023 WL 4494163, at *1-5 (E.D. Pa. July 11, 2023).

apartment—per his Amended Complaint,[2] to help him with his daily needs while managing his osteoporosis and degenerative joint disease.[3] But that year, Samuel wanted to move to the Birchwood at Concord Apartments in Glen Mills, Pennsylvania, which are administered by the DCHA, so he requested that the NCCHA transfer—in the parlance of Section 8, "port"—his voucher there. After Samuel submitted the necessary application documents, Defendants Laura Blackburn, then DCHA's director, and Catherine Cueny, a DCHA Applications and Admissions Specialist, met with him in person and showed him a one-bedroom, first-floor unit. Samuel subsequently signed a voucher for a one-bedroom unit in the development. He insists that this signature is a fabrication. His lease lists only Samuel as an occupant of the unit.

When he underwent his next annual reexamination[4] for his voucher in March 2021, Samuel apparently did not register any concern about the size of his apartment. But that June, he emailed his case worker, Defendant Christina Pro, asking why his voucher was now for just a one-bedroom unit. He also sent a letter intending to reserve his right to an informal hearing on the matter. In August, Samuel followed up, explaining that he required a two-bedroom voucher because he was "in need of a live in aide." Pro explained in her response that, according to DCHA's administrative plan, he was entitled only to a one-bedroom apartment.

Samuel escalated his concerns to Blackburn, who told Samuel that she was "[n]ot sure

---

[2] Defendants incorporate by reference portions of Samuel's Amended Complaint into their statement of undisputed material facts, to which Samuel does not object in his counterstatement of facts.

[3] Although Samuel does not adduce additional evidence of these medical conditions in the summary judgment record, Defendants do not contest that he is disabled for purposes of the relevant housing regulations, so any argument that Samuel is not entitled to a live-in aide because he is not disabled is waived. *United States v. Healy*, 2013 WL 1624310, at *1 (M.D. Pa. Apr. 15, 2013).

[4] Local housing authorities "must conduct a reexamination of family income and composition at least annually." 24 C.F.R. § 982.516(a)(1); *see also Switch v. McKeesport Hous. Auth.*, 2009 WL 3856304, at *1 n.2 (W.D. Pa. Nov. 17, 2009).

about" his entitlement to a one-bedroom voucher as opposed to a two-bedroom one, but if he wanted a larger unit, he would need to (1) submit the necessary verifying information from a doctor; (2) submit authorization to run a background check on the aide; (3) have the proposed aide pass a background check and meet "all eligibility requirements;" and, (4) give proper notice to the development that he intended to vacate his current one-bedroom apartment.  "Upon receipt of [a] clearance letter" declaring Samuel in compliance with his current lease, Blackburn continued, "a two [b]edroom [v]oucher will be issued."  Per Blackburn, this "procedure is for all clients who ask to have a live-in aide."  Samuel does not meaningfully dispute that he failed to respond to Blackburn with the necessary information for Defendants to consider his request.

On June 21, 2022, Samuel filed this lawsuit against DCHA and several employees at the agency and at the housing development where he lives, alleging a mix of civil and criminal claims under state and federal law.  The Court mostly granted Defendants' Motion to Dismiss, so the only remaining claim is Samuel's allegation that DCHA deprived him of a live-in aide in violation of Section 8's implementing regulations when his two-bedroom voucher at NCCHA was turned into a one-bedroom voucher upon moving to Pennsylvania.  *Samuel v. Delaware Cnty. Hous. Auth.*, 2023 WL 4494163, at *8-9 (E.D. Pa. July 11, 2023).  This claim is live only against DCHA, Pro, Cueny, Blackburn, and Dawn Ware, another DCHA employee who signed Samuel's 2019 voucher (together, the "Individual Defendants").  *Id.* at *9 n.10.  Discovery has concluded, and Defendants' Motion for Summary Judgment is ripe.

**II.  LEGAL STANDARD**

A party is entitled to summary judgment if it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "By its very terms, this standard provides that the mere existence of *some* alleged

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Material facts are those that could affect the outcome of the proceeding." *Roth v. Norfalco LLC*, 651 F.3d 367, 373 (3d Cir. 2011) (internal quotation marks and citation omitted). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson*, 477 U.S. at 248-52). "The non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Id.* (citation omitted). A moving party is entitled to judgment as a matter of law where the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323.

"Inferences to be drawn from the underlying facts contained in the evidential sources must be viewed in the light most favorable to the party opposing the motion." *Peters Twp. Sch. Dist. v. Hartford Acc. & Indem. Co.*, 833 F.2d 32, 34 (3d Cir. 1987); *see also Scott v. Harris*, 550 U.S. 372, 378 (2007) (cautioning that "courts are required to view the facts and draw *reasonable* inferences" in favor of the nonmoving party (emphasis added)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

Because Samuel proceeds *pro se*, the Court will construe his filings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Nonetheless, "on a motion for summary judgment, a pro se plaintiff is not relieved of his obligation under Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Lloyd v. Presby's Inspired Life*, 251 F. Supp.3d 891, 898 (E.D. Pa. 2017) (internal quotation marks and citation omitted); *see also Edwards v. Rice-Smith*, 606 F. Supp.3d 151, 154 (E.D. Pa. 2022). "The party opposing summary judgment, whether pro se or counseled, must present evidence, through affidavits, depositions, or admissions on file, to show that there is a genuine issue for trial." *Watson v. Phila. Hous. Auth.*, 629 F. Supp.2d 481, 485 (E.D. Pa. 2009).

### III. DISCUSSION

Because Samuel's remaining claim implicates the highly reticulated scheme for regulating HCVs, the Court reviews those regulations before turning to the merits.

#### A. Applicable Regulations

Samuel receives his rent voucher through the Section 8 of the Housing Act of 1937 ("Section 8"). 42 U.S.C. § 1437f. Three sets of regulations implementing the Housing Act are relevant to this case. *Id.* § 3535(d) (providing the Secretary of the Department for Housing and Urban Development ("HUD") with rulemaking authority).

The first involves what happens when a tenant who already has a voucher wants to move. Federal regulations allow for the "portability" of a tenant's voucher across the country. 24 C.F.R. § 982.353(b) (noting that, subject to exceptions, "a voucher-holder or participant family has the right to receive tenant-based voucher assistance, in accordance with requirements of this part, to lease a unit . . . anywhere in the United States, in the jurisdiction of a [local housing agency] with a tenant-based program"). If a tenant wants to move "under portability . . . to an area outside" his or her current public housing agency's ("PHA") jurisdiction, "the receiving

PHA must administer assistance for the family." *Id.* § 982.355(a).

Federal regulations set out a procedure that any tenant wishing to move must follow. First, he or she must notify the PHA at which they currently live that they want to move and let the agency know to where they plan on moving. *Id.* § 982.355(c)(1). If the PHA confirms that the tenant is eligible to move, *id.* § 982.355(c)(2), the tenant's new PHA decides to "absorb" his or her voucher, *id.* § 982.355(c)(4), and all the right paperwork is exchanged, *id.* § 982.355(c)(7), the tenant can move with his or her voucher. The tenant "must . . . be informed of the receiving PHA's procedures for incoming portable families and comply with these procedures." *Id.* § 982.355(c)(8). "[F]ailure to comply may result in denial or termination of the receiving PHA's voucher." *Id.* That said, "[t]he receiving PHA does not redetermine eligibility for a participant family." *Id.* § 982.355(c)(9). Instead, "the initial PHA must determine whether the family is eligible for admission to the receiving PHA's HCV program." *Id.*

The second set of regulations governs when a tenant is entitled to have a live-in aide. An "elderly, near-elderly or disabled" recipient of such a housing voucher "may request that" a PHA "approve a live-in aide to reside in the unit and provide necessary supportive services for a family member who is a person with disabilities."[5] 24 C.F.R. § 982.316(a). A PHA "must approve a live-in aide if needed as a reasonable accommodation" under the Department of Housing and Urban Development's ("HUD") regulations "to make the program accessible to and usable by the family member with a disability." *Id.* A recipient of a voucher can have a live-in aide only "[i]f the PHA has given approval." *Id.* § 982.551(h)(4). "At any time, the PHA may

---

[5] A person is disabled under the Fair Housing Act if they he or she has "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) [is] regarded as having such an impairment." 42 U.S.C. § 3602(h).

refuse to approve a particular person as a live-in aide, or may withdraw such approval, if:

> (1) The person commits fraud, bribery or any other corrupt or criminal act in connection with any federal housing program;
> (2) The person commits drug-related criminal activity or violent criminal activity; or
> (3) The person currently owes rent or other amounts to the PHA or to another PHA in connection with Section 8 or public housing assistance under the 1937 Act.

*Id.* § 982.316(b). Further, and crucial for this case, local housing authorities like DCHA have "the discretion to adopt reasonable policies concerning residence by . . . a live-in-aide, and defining when PHA consent may be given or denied."[6] *Id.* § 982.551(h)(4).

In line with those regulations, DCHA promulgated Administrative Plans that include the procedures for approving a live-in aide. In both 2019 and 2021, the Administrative Plan required a tenant requesting such an aide to do so "in writing," with verification from "a reliable, knowledgeable professional, such as a doctor, social worker, or case worker, that the live-in aide is essential for the care and well-being of" the tenant. Both the tenant and the proposed live-in aide were "required to submit a certification stating that the live-in aide is (1) not obligated for the support of the person(s) needing the care, and (2) would not be living in the unit except to provide the necessary supportive services." "Relatives may be approved as live-in-aides if they meet all of the criteria defining [one]. However, a relative who serves as a live-in-aide is not considered a family member and would not be considered a remaining member of a tenant family."

A third set of regulations affords tenants the right to an informal hearing on certain matters. "[A]n opportunity for an informal hearing to consider whether" the PHA has acted "in accordance with the law, HUD regulations and PHA policies" is "required" if the action

---

[6] As was the case at the motion-to-dismiss stage, *Samuel*, 2023 WL 4494163, at *9, Defendants do not contest the availability of a cause of action under these regulations. Any argument to that effect therefore is waived. *Healy*, 2013 WL 1624310, at *1 (citation omitted).

involves: (1) a determination of the tenant's income, utility allowance or family size; or, (2) a decision to terminate a tenant's housing assistance. *Id.* § 982.555(a)(1).  On the other hand, no such hearing is required for, among other things, "[d]iscretionary administrative determinations by the PHA," "[g]eneral policy issues or class grievances," "[a] PHA determination not to approve a unit or tenancy," or "[a] PHA determination that the unit is not in accordance with [minimum housing quality standards] because of the family size."  *Id.* § 982.555(b).

### B. Samuel Never "Requested" a Live-In Aide Consistent with Validly Promulgated Local Regulations

Liberally construed, *Erickson*, 551 U.S. at 94, Samuel's Amended Complaint alleges that, by failing to abide by the above regulations, Defendants did not reasonably accommodate him as required by the Fair Housing Act and its amendments.[7]  DCHA argues that it is entitled to summary judgment on this claim because Samuel failed to comply with the agency's policies for requesting a live-in aide—essentially, his accommodation was never "refused" as far as federal law is concerned.[8]

The Fair Housing Act makes it illegal to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of a [disability]."  42 U.S.C. § 3604(f)(2).  It defines discrimination to include, among other things, "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  *Id.*

---

[7] This is a distinct claim from the interference claim that the Court previously dismissed with prejudice.  *Samuel*, 2023 WL 4494163, at *6-8.

[8] Because DCHA is entitled to summary judgment on this ground, the Court does not address their arguments that: (1) they are entitled to summary judgment because Samuel was refused a live-in aide in 2019, outside the two-year statute of limitations under the Fair Housing Act; and, (2) they never discriminated against Samuel because of his disability.

§ 3604(f)(3)(B). As a threshold matter, a claim under this portion of the Fair Housing Act requires that there be a "refusal" by the defendant to "make reasonable accommodations." *Revock v. Cowpet Bay W. Condominium Ass'n*, 853 F.3d 96, 111 & n.14 (3d Cir. 2017); *see also Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018) (disaggregating the text of Section 3604(f)(3)(B) into three elements, the first being a refusal by the defendant). A refusal can be inferred from the circumstances and may be constructive, such as when a housing agency unduly delays action on a request. *Revock*, 853 F.3d at 110-11 (citations omitted). Whatever form the refusal takes, however, "[f]or a housing provider's action to be considered a 'refusal' under the Fair Housing Act, the provider must have had a prior 'opportunity to accommodate.'" *Id.* at 111 (citation omitted); *see also Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1219 n.11 (11th Cir. 2008) (collecting cases holding similarly from other circuits).

Here, it is not in genuine dispute that Samuel failed to abide by DCHA's procedures for getting a live-in aide approved as laid out in the Administrative Plan, so Defendants never acted on his request one way or another—he was never "refused" as required to proceed under the Fair Housing Act. *Vorchheimer*, 903 F.3d at 105. True, DCHA "must approve a live-in aide if needed as a reasonable accommodation." 24 C.F.R. § 982.316(a). But HUD regulations also expressly commit to DCHA's "discretion" the power to promulgate its own "reasonable policies . . . defining when [its] consent" for a live-in aide "may be given or denied." *Id.* § 982.551(h)(4). DCHA did exactly that via its Administrative Plans, which required certain verifying paperwork from Samuel. It is not in genuine dispute on this record that, despite having been informed of this requirement by Blackburn, Samuel never filed the paperwork. And without that paperwork in hand, according to the Administrative Plan, the accommodation of a

9

live-in aide was not "requested" consistent with DCHA policy, so there was no "refusal" by Defendants to grant that accommodation whose reasonableness can be judged.[9] *Revock*, 853 F.3d at 110; *see also* 42 U.S.C. § 3604(f)(3)(B). Indeed, Samuel essentially concedes that this is the case in his opposition to summary judgment, arguing instead that the only reason that "[t]here is no evidence [of] Defendants refusing [him] a reasonable accommodation is because [he] was never given the opportunity . . . to dispute it or argue against it" (an argument that is addressed below). Of course, if Samuel were to comply with the Administrative Plan's strictures in requesting a live-in aide, DCHA then would have to respond to that request, and the reasonableness of any denial would then be determined under governing law. But the Court has no occasion to address the merits of that hypothetical dispute. Therefore, it is not in genuine dispute that DCHA did not fail to reasonably accommodate Samuel as required by HUD regulations, and the agency therefore is entitled to summary judgment on Samuel's remaining claim.[10]

The Individual Defendants, too, are entitled to summary judgment for essentially the same reasons. They correctly argue that there is no evidence that any of them, while acting in

---

[9] The Court does not understand Samuel to be disputing the reasonableness of DCHA's policies regulating the approval of live-in aides contained in the Administrative Plan. Nor does the Court take Samuel to be arguing that the Fair Housing Act or HUD regulations required DCHA to grant him some sort of variance from the ordinary procedures for requesting such an aide.

[10] Samuel separately argues that Defendants' refusal to grant him a live-in aide—apparently back in 2019—constituted a "re-determination as to [his] status" contrary to HUD regulations on portability, pointing to the bar on receiving PHAs from "redetermin[ing] eligibility for a participant family." 24 C.F.R. § 982.355(c)(9). Even if this had taken place within the limitations period, *Samuel*, 2023 WL 4494163, at *6-7, DCHA's failure to consider Samuel's application for a live-in aide without the supporting materials required by the Administrative Plan did not make any determination about his eligibility. For purposes of Section 8, a tenant's "eligibility" depends on his or her income, immigration status, and criminal record. *Id.* § 982.201. If a tenant is "eligible," "the PHA may admit" him or her. *Id.* But what Samuel contests here is unrelated to admission. He is contesting DCHA's decision, having admitted him, to approve him for only a one-bedroom apartment without a live-in aide. By its own terms, this was not a redetermination of eligibility, so no violation of the portability regulations took place here.

their official capacity, refused Samuel a reasonable accommodation. Because Samuel never submitted to any of the Individual Defendants a request for a live-in aide that they could act on consistent with the DCHA Administrative Plan, they could not have refused him a reasonable accommodation. Samuel's argument to the contrary references *respondeat superior* liability, but that doctrine allows DCHA to be held liable for the acts of its agents, not the other way around. *CBS Corp. v. F.C.C.*, 535 F.3d 167, 189 (3d Cir. 2008), *cert. granted, judgment vacated on other grounds*, 556 U.S. 1218 (2009). Summary judgment therefore will be granted for the Individual Defendants as well.

### C. Samuel Did Not Have a Right to a Hearing on His Request for a Live-in Aide

Samuel also argues that DCHA violated the law by refusing to hold an informal hearing on his receipt of a one-bedroom voucher without room for a live-in aide. But HUD regulations do not require DCHA to hold an informal hearing in such contexts, so this is not a basis for denying summary judgment because it does not affect whether the Defendants are entitled to judgment as a matter of law.

As discussed above, PHAs are required to hold informal hearings only under certain enumerated circumstances. 24 C.F.R. § 982.555(a)(1). Nowhere does Samuel explain which circumstance applies to this case. The record is bereft of any evidence that DCHA made "[a] determination of [his] family unit size" or decided to "terminate assistance . . . because of [his] action or failure to act." *Id.* § 982.555(a)(1)(iii)-(iv). Family size determinations—how many bedrooms a family needs, *id.* § 982.4—are made only after a live-in aide is "approved by the PHA to reside in the unit." *Id.* § 982.402(b)(6). If DCHA never approved a live-in aide for Samuel, it did not make a new family unit size determination that would entitle him to an informal hearing. And it is undisputed that Samuel did not have his assistance terminated.

Termination encompasses far more dramatic actions than shrinking a tenant's apartment or depriving him or her of a live-in aide, such as "refusing to enter into a [housing assistance payments] contract or approve a lease" or "terminating housing assistance payments under an outstanding [housing assistance payments] contract." *Id.* § 982.552(a)(3).  Failure to respond to an as-yet-incomplete request for a live-in aide falls short of termination.  If actionable at all, DCHA's actions are better thought of as a "[d]iscretionary administrative determination[]," which HUD regulations make clear do not entitle Samuel to an informal hearing.  *Id.* § 982.555(b).  Therefore, Samuel's argument that he was entitled to an informal hearing does not create a triable issue such that summary judgment should be denied.

### IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary judgment will be granted.  An appropriate order follows.

**BY THE COURT:**

/S/Wendy Beetlestone, J.

_____

**WENDY BEETLESTONE, J.**
